IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JOHN RECONNU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 3:10-CV-0688 |
| ) | Jury Demand (12) |
| SERVICE MANAGEMENT SYSTEMS, INC. ) | Judge Campbell |
| and POWERS MANAGEMENT, LLC, ) | Magistrate Judge Griffin |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT POWERS MANAGEMENT, LLC'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Powers Management, LLC ("Powers") offers this Memorandum in Support of its Motion for Summary Judgment. John Reconnu ("Reconnu" or "Plaintiff") has asserted employment claims against a company that never employed him. Through this lawsuit, Reconnu seeks to extend existing employment law beyond all logical bounds to reach the vendor/vendee relationship between his employer and Powers. Accordingly, there are no disputed issues of material fact as to Plaintiff's claims against Powers, and Powers is entitled to judgment as a matter of law.

## I. Factual Background

### A. Vendor/Vendee Relationship Between Powers and SMS

Powers is the property management company that operates the Sommet Center.[1]  Powers contracted with SMS to provide cleaning services at the Sommet Center.  (Kennedy Dep., p. 14).  The contract between Powers and SMS provided that SMS employees would wear uniforms.  (Kennedy Dep., pp. 23 and 46).

Reconnu admits that Powers did not select SMS's employees.  (Reconnu Dep., Vol. II, p. 13).  Powers did not pay SMS's employees.  *Id*.  Powers did not issue W-2s to SMS employees.  *Id.*  Powers did not provide cleaning materials or equipment for the use of SMS's employees.  *Id.*  Powers did not schedule SMS's employees.  *Id.*  Powers did not set Reconnu's hours at the Sommet Center.  *Id.*  Powers did not select SMS's subcontractors at the Sommet Center.  (Reconnu Dep., Vol. II, pps. 13-14).

SMS, not Powers, supervised Reconnu.  (SMS Answer to Amended Complaint ¶17).  Reconnu admits that his ***only*** direction from Powers involved weekly walk throughs of the facility, where Powers' representative, Dewayne Smith, would point out cleanliness issues that needed to be corrected.  (Reconnu Dep., Vol. II, p. 12).  When Smith raised these issues with Reconnu, SMS (not Powers) determined how it would resolve them.  (Reconnu Dep., Vol. II, pp. 37-41).

---

[1] The Sommet Center is now known as the Bridgestone Arena.  At the time of Reconnu's employment, the Bridgestone Arena was know as the Sommet Center, and therefore, the arena is referenced as the Sommet Center in this Memorandum.

### B. Reconnu's Role at the Sommet Center

Reconnu was the SMS's Facilities Manager at the Sommet Center from September 1, 2008, until his employment was terminated **by SMS** on October 28, 2008. (Amended Complaint ¶¶ 11, 12, 29); (Reconnu Dep., Vol. I, p. 70).

Reconnu's responsibilities as Facilities Manager at the Sommet Center included organizing the SMS's crews, scheduling SMS's staff, planning for events, housekeeping, training SMS's employees, and ordering cleaning supplies and chemicals. (Reconnu Dep., Vol. I, pp. 80-81).

### C. Cleaning Problems with the Sommet Center Under Reconnu

By Reconnu's own admission, Powers took issue with SMS's cleaning of the arena under Reconnu's leadership, and Powers pointed out deficiencies that needed correcting. Specifically, Powers complained that the floors in the bleacher area were sticky following events; restrooms were not cleaned in detail; carpet stains were not extracted; trash can liners were not properly tucked into trash cans so that they were non-visible; the club suite areas needed vacuuming, and there were fingerprints on the plexiglas in the seating area. (Reconnu Dep., Vol. II, pp. 35-36).

### D. Uniforms of Somali Employees

Uniforms are common in the commercial cleaning industry. (Reconnu Dep., Vol. II, p. 21). The purpose of SMS'ss uniforms is to provide a "uniform appearance across the board" and maintain a professional appearance. (Reconnu Dep., Vol. II, p. 21). Reconnu admits that it was his responsibility as Facility Manager for SMS at the Sommet Center to ensure that all of his employees were in proper uniform. (Reconnu Dep., Vol. II, p. 64).

On the first Saturday night in October 2008, during a Predators exhibition game, Smith called Reconnu on a two-way radio and asked him to come up to the second level of the arena

where the club suites are located. (Reconnu Dep., Vol. I, pp. 83-84).[2] When Reconnu arrived at the second level, there were two SMS employees of Somali descent who were wearing "colorful" scarves, black shirts, and colorful skirts. (Reconnu Dep., Vol. I, p. 84). Reconnu admits that the employees of Somali descent were out of uniform. (Reconnu Dep., Vol. I, p. 90). Smith allegedly said to Reconnu that the dress of the employees of Somali descent did not "look good" and asked Reconnu to move the employees of Somali descent to a different area of the arena. *Id*. As best Reconnu can recall, Smith said, "You have the two ladies up here, and they obviously got the scarves and skirts on, you know, and it's not the image we want to go ahead and project at the Sommet Center, and we got to do something about this." (Reconnu Dep., Vol. I, p. 97).

In response to Smith's request, Reconnu instructed his assistant manager, Blake Sharpton, to reassign the Somali employees to a different part of the Sommet Center. (Reconnu Dep., Vol. I, p. 84). Reconnu did not object to Smith's request to move the Somali employees. (Reconnu Dep., Vol. I, p. 100). The Somali employees were not treated any differently than any other employees who were out of uniform would have been treated. (Reconnu Dep., Vol. I, p. 101).

The following Wednesday, Smith came into the SMS office at the Sommet Center and "expressed concern" about the Somali employees' scarves and skirts. (Reconnu Dep., Vol. I, p. 114). Reconnu explained to Smith that he had spoken with SMS Human Resources Department, and there would be modifications of the Somali employees' uniforms to include a plain black skirt, plain black head scarf, and long-sleeved uniform shirt. (Reconnu Dep., Vol. I, p. 114). Smith responded that SMS needed to go ahead and correct the uniform. (Reconnu Dep., Vol. I,

---

[2] Smith has a different recollection of the conversations regarding Somali SMS employees' uniforms. However, for the purpose of summary judgment, Powers will state Reconnu's version of event, which, even if credited for summary judgment purposes, does not establish any violations of law.

p. 117). According to Reconnu, Smith "expressed discontent" with SMS's delay in procuring acceptable uniforms for the Somali employees. (Reconnu Dep., Vol. I, pp. 122-123).

The following day, Reconnu and Deb Lafferty in SMS's Human Resources Department jointly decided to place the Somali employees on paid administrative leave until SMS could obtain the correct uniforms. (Reconnu Dep., Vol. I, p. 124). Neither of the Somali employees objected to wearing a black scarf, rather than a colored scarf. (Reconnu Dep., Vol. I, p. 127). Neither of the Somali employees objected to wearing a black skirt as opposed to a colored skirt. (Reconnu Dep., Vol. I, p. 127). Once the Somali employees understood that they would be paid for their time off, they did not object to being placed on administrative leave with pay while waiting for the correct uniforms to arrive. (Reconnu Dep., Vol. I, p. 127). Reconnu agreed with how SMS handled the Somali employees' uniform situation. (Reconnu Dep., Vol. I, p. 129).

The following Monday, October 14, 2008, Reconnu met with Smith and Michelle Kennedy, Powers General Counsel for five to ten minutes. (Reconnu Dep., Vol. I, p. 134). During this meeting, all three participants agreed that the Somali employees would wear a plain black skirt, black scarf, and long-sleeved black shirt. *Id*. Reconnu thought the meeting with Smith and Kennedy went well, and Reconnu's believed that everything had been resolved and Powers was satisfied. (Reconnu Dep., Vol. I, p. 136).

Reconnu did not have any further conversations with SMS or Powers regarding the Somali employees after the October 14, 2010 meeting. (Reconnu Dep., Vol. I, p. 136).

### E. Reconnu's Termination

Reconnu was terminated by SMS on October 28, 2008. Reconnu is not aware of any conversations between Powers and SMS where Powers requested that SMS terminate him.

N BHB 814776 v3
2911111-000004 06/03/2011

(Reconnu Dep., Vol. II, p. 18). Reconnu is not aware of any conversations between Powers and SMS where Powers requested that SMS discipline him. (Reconnu Dep., Vol. II, p. 18).

## II. Summary Judgment Standard

Summary judgment is appropriate when the evidence establishes there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Covington v. Knox County School Sys.,* 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the Court that the requirements of Rule 56 have been met. *See Martin v. Kelley,* 803 F.2d 236, 239 n.4 (6th Cir. 1986). The Court must determine whether there is a genuine issue of material fact. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Covington,* 205 F.3d at 914 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific admissible facts to demonstrate the existence of a genuine issue of material fact. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

If the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he has the burden, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the non-moving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall*

- 6 -

N BHB 814776 v3
2911111-000004 06/03/2011
Case 3:10-cv-00688 Document 31 Filed 06/03/11 Page 6 of 12 PageID #: 386

*Holding Co., Inc.,* 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Shah v. Racetrac Petroleum Co.,* 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson,* 477 U.S. at 252). If the evidence offered by the non-moving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the non-moving party, the motion for summary judgment should be granted. *Anderson,* 477 U.S. at 249-52. *See also Goins v. Clorox Co.,* 926 F.2d 559, 561 (6th Cir. 1991). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White,* 190 F.3d 427, 431 (6th Cir. 1999) (citing *Anderson,* 477 U.S. at 247-49).

### III. Argument

#### A. Powers Cannot be Liable Under Title VII or the THRA Because it Never Employed Reconnu

There is a threshold issue that warrants summary judgment in favor of Powers on Reconnu's discrimination and retaliation claims. Powers never employed Reconnu. Consequently, Powers cannot be held liable for employment discrimination or retaliation against someone that it never employed.

In order to prevail on his Title VII and Tennessee Human Rights Act ("THRA") claims against Powers, Reconnu must plead and prove that Powers was his joint employer.[3] Reconnu

---

[3] The THRA is interpreted co-extensively with Title VII. *See Allen v. McPhee,* 240 S.W.3d 803, 812 (Tenn. 2007). The Tennessee Supreme Court has specifically relied upon Title VII to determine who is an "employer" for the purpose of the THRA. *See Bredesen v. Tennessee Judicial Selection Com'n*, 214 S.W.3d 419, 430 (Tenn. 2007).

- 7 -

does not specifically plead that Powers was a joint employer. Even if he had pled a joint employer theory, however, his claim would fail as a matter of law based on the undisputed facts.

The Sixth Circuit has described the joint employer test for determining when a contracting company can be liable under Title VII:

> The basis of the joint employer finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. Thus, the "joint employer" concept recognizes that the business entities involved are in fact separate but that they *share* or co-determine those matters governing the essential terms and conditions of employment.

*Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, Fn. 4 (6th Cir. 1997). Whether sufficient control exists to constitute a joint employer relationship requires the court to consider such factors as authority to hire, fire, and discipline employees, promulgation of work rules and conditions of employment, issuance of work assignments and instructions, and supervision of employees' day-to-day activities. *McClenton v. Office of Evolutions, Inc.*, 2006 WL 522389, *4 (W.D. Tenn. March 2, 2006) (*citing EEOC v. Regency Windsor Management Co.*, 862 F. Supp. 189, 191 (W.D.Mich.1994).)

Reconnu's own admissions defeat any unpled claim to a joint employer relationship between SMS and Powers. As indicated above, Powers did not select SMS's employees. (Reconnu Dep., Vol. II, p. 13). Powers did not pay SMS's employees. *Id*. Powers did not issue W-2s to SMS employees. *Id.* Powers did not provide cleaning materials or equipment for the use of SMS's employees. *Id.* Powers did not schedule SMS's employees. *Id.* Powers did not set Reconnu's hours at the Sommet Center. *Id.* Powers did not select SMS's subcontractors at the Sommet Center. (Reconnu Dep., Vol. II, pps. 13-14). Reconnu admits that his **only** direction from Powers involved weekly walk throughs of the facility, where Powers' representative,

- 8 -

Dewayne Smith, would point out cleaning issues that needed to be corrected. (Reconnu Dep., Vol. II, p. 12). When Smith raised cleanliness issues with Reconnu, SMS (not Powers) determined how it would resolve those issues. (Reconnu Dep., Vol. II, pp. 37-41). The following exchange during Reconnu's deposition is instructive of the lack of evidence to support joint employer theory:

> Q. Okay. Please tell me all of the reasons you think Dewayne Smith was your supervisor.
>
> A. He's the client. He was the customer. Anything that he would like to go ahead and would have wanted addressed in the business, I had to take care of it, sir. As the old business adage goes, you know, who's always right, the customer.
>
> Q. Any other reasons you think Dewayne Smith was your supervisor?
>
> A. No.
>
> Q. I think you testified yesterday that Mr. Smith did walkthroughs at the facility, at the Sommet Center, with you; correct?
>
> A. Yes.
>
> Q. And he would point out things that needed correcting, right?
>
> A. Right.
>
> Q. Other than doing walk throughs and pointing out things that needed correcting, are there any other ways that you allege Mr. Smith exercised control over what you did for SMS?
>
> A. No

(Reconnu Dep., Vol. II, p. 12).

Reconnu's testimony establishes that Powers did not control his day-to-day work and only pointed out deficiencies with the end result that Powers had contracted with SMS to perform on a weekly basis. Michelle Kennedy, Powers' Executive Vice President, General Counsel, and Chief Financial Officer, explained that "[i]t wasn't about John Reconnu's

- 9 -

performance. It was about the facility not being clean." (Michelle Kennedy Dep., p. 32). There simply is no evidence in the record that Powers controlled Reconnu's performance.

Extending the joint employer theory to vendor/vendee relationships would be an unwarranted extension of Title VII case law. Dire practical consequences could result if companies are forced to defend lawsuits by their vendors' employees.

### B. Plaintiff's Title VII and THRA Claims Fail As a Matter of Law

Even if Plaintiff were able to overcome the threshold burden of proving that Powers was his joint employer (which he cannot), his discrimination and retaliation claims substantively fail for the reasons set forth in SMS's Motion for Summary Judgment and Memorandum in Support thereof. (Docket Nos. 24 and 26).

### C. Powers is Not Liable for Negligent Hiring, Retention, or Supervision

In order to prove a claim of negligent hiring, retention, or supervision under Tennessee law, the plaintiff must prove five elements: (1) a duty of care; (2) breach of that duty; (3) a loss or injury; (4) causation in fact, and (5) proximate cause. *McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn. 1991); *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856 (Tenn. 1985). In order to sustain a claim of negligent hiring or supervision "it must be shown that the employer was in complete charge of the work being performed by the employee." *Gates v. McQuiddy Office Products*, 1995 WL 650128, *2 (Tenn. Ct. App. Nov. 2, 1995).

Plaintiff's own testimony defeats his negligence claim:

Q. Are you alleging that Powers did anything improper in selecting Dewayne Smith?

A. No.

Q. Are you aware of any reason Powers would have had to terminate Dewayne Smith prior to your interaction with him?

A. No.

- 10 -

(Reconnu Dep., Vol. II, p. 48).

In this case, Powers was not in control of the alleged negligent acts about which Plaintiff complains. Specifically, Reconnu claims that "Defendants failed to properly train their employees regarding discriminatory behavior and retaliation." (Complaint ¶ 54). He also claims that "Defendants" were negligent in hiring supervisors who engaged in alleged discriminatory practices. However, Powers had no legal duty to select the employees of its vendor and train them on discrimination and harassment, and Plaintiff cannot identify any authority under Tennessee law to support such a duty. In the absence of such a duty, Reconnu's negligence claim fails as a matter of law.

Further, even if there were such a duty, there is no evidence that duty was breached in this case. There is no evidence in the record indicating that Powers failed to fulfill any obligations in hiring, retaining, or supervising Dewayne Smith. First of all, Dewayne Smith did nothing discriminatory that would breach any duty. Secondly, even if he had, there is no evidence in the record that any alleged harm to the Plaintiff was related in any way to Powers hiring, retaining, or supervising Smith.

Finally, there is no evidence that any of Powers' hiring, retention, or supervision practices were the proximate cause of any harm to Plaintiff. SMS, not Powers, terminated Plaintiff's employment, and therefore, Powers cannot be the proximate cause of any alleged harm resulting from the termination of Plaintiff's employment. Therefore, Reconnu's negligence claim is both legally and factually deficient.

## IV. Conclusion

For all of the foregoing reasons, Powers submits that there are no disputed issues of material fact and it is entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56.

Respectfully submitted,

s/Ben H. Bodzy
Kenneth A. Weber (#15730)
Ben. H. Bodzy (#23517)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
211 Commerce Street, Suite 1000
Nashville, TN 37201
(615) 726-5600
(615) 726-0464 (facsimile)

Attorneys for Defendant Powers Management, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of June 2011, a true and correct copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system:

Donald D. Zuccarello
Anne Williams
LAW OFFICE OF DONALD D. ZUCCARELLO
3209 West End Avenue
Nashville, TN 37203

Harold Pinkey
Sarah Talley
MILLER & MARTIN, PLLC
Suite 1200, One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219

s/Ben H. Bodzy
Ben H. Bodzy